IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS AYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-00187-DGK |
| | ) | |
| JACKSON COUNTY, MISSOURI, | ) | |
| JOE PICCININI, and JOHN DOE, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

This civil action brought by Nicholas Ayers ("Plaintiff") arises from a period of his confinement in Jackson County Detention Center. Plaintiff sued Defendants Joe Piccinini ("Piccinini"), John Doe, and Jackson County, Missouri ("Jackson County") alleging the conditions of his cell violated his constitutional right to be free from cruel and unusual punishment. Plaintiff also seeks judgement against all Defendants for premises liability.

Now before the Court is Jackson County's and Piccinini's Motion to Dismiss (Doc. 9). For the following reasons, the motion is GRANTED IN PART and Plaintiff is GRANTED LEAVE of Court to file his First Amended Complaint pursuant to Federal Rule of Civil Procedure 15.

**Background**

Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court finds the facts to be as follows.

From January 1, 2016 through March 17, 2016, Plaintiff was an inmate housed on the second floor of a cell unit at the Jackson County Detention Center, operated by Defendant Jackson County. Defendant Piccinini was the Director of the Jackson County Detention Center

and was responsible for its day to day operation. Defendant John Doe is unknown to Plaintiff and is responsible for maintenance of the facilities at the Jackson County Detention Center.

On or about January 1, 2016, Plaintiff notified Defendants[1] that a plumbing pipe in his cell was broken. The water in Plaintiff's cell was shut off until approximately January 16, 2016, when a plumber repaired the broken pipe. Shortly after, the pipe broke again and the water was again shut off, causing Plaintiff's toilet to be inoperable.

When the toilet in the cell adjacent to Plaintiff's was flushed, sewage would back-flow into the toilet in Plaintiff's cell. Plaintiff's cell consistently smelled of sewage and was frequently contaminated by sewage spilling out of the toilet and onto the floor of the cell. The conditions directly exposed Plaintiff to contact with human waste including feces and urine each time the toilet in Plaintiff's cell overflowed. After several weeks of this condition, Plaintiff began carrying water from a first floor mop sink in a large plastic trash can, up the cell block stairs, and to his second floor cell, so that he could "flush" the sewage in his cell toilet.

Plaintiff repeatedly notified Defendants and other correctional officers of these conditions and repeatedly requested to be transferred to a different cell. Defendants did not address the problems with Plaintiff's cell or move him to another location.

At approximately 4:00 a.m. on March 17, 2016, the smell from the Plaintiff's cell toilet was so strong that Plaintiff could not sleep. Plaintiff left his cell, which had a broken lock, to retrieve water from the first floor to flush his toilet. As Plaintiff carried water up the stairs in the dark, the water shifted in the trashcan and he lost his balance causing him to fall backward and strike his head, neck, and back.

---

[1] Piccinini complains Plaintiff generally references "Defendants" in his complaint instead of naming a particular defendant for each allegation. While it is preferable to indicate which defendant a particular allegation is directed toward, the Court assumes Plaintiff's allegations are true, and he communicated to all defendants, including Piccinini, about the conditions in his cell.

On March 16, 2017, Plaintiff filed a three-count lawsuit alleging (1) violation of the Eighth Amendment, cruel and unusual punishment provision under 42 U.S.C. § 1983, against Piccinini and Defendant John Doe; (2) failure to supervise and train under 42 U.S.C. § 1983, against Jackson County; and (3) premises liability under Mo. Rev. Stat. § 537.600(2), against all Defendants.

## Standard

To survive a 12(b)(6) motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although a complaint is not required to have detailed factual allegations, a plaintiff must provide more than mere "labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 545. In reviewing the complaint, the court assumes the facts are true and draws all reasonable inferences from those facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Discussion

**I. Plaintiff's complaint contains sufficient factual allegations to support his theory that Piccinini acted with deliberate indifference or tacit authorization.**

In Count I, Plaintiff alleges the conditions of his cell violated his constitutional right to be free from cruel and unusual punishment. Conditions of a prisoner's confinement can give rise to Eighth Amendment violations under § 1983 if: (1) objectively, the deprivation was sufficiently serious; and (2) subjectively, Defendants acted with a sufficiently culpable state of mind. *Choate v. Lockart*, 7 F.3d 1370, 1374 (8th Cir. 1993); *see also Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Defendants argue that Plaintiff has failed to allege the second element by merely

alleging supervisory knowledge. One way supervisors may be liable under § 1983 is when their inaction amounts to "deliberate indifference" or "tacit authorization" of constitutional violations. *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989). To find a deliberate indifference, actual knowledge of the constitutional violations is not required; reckless disregard by the supervisor is sufficient, meaning the supervisor knew or should have known of the violation. *Id.* at 138.

Here, Plaintiff alleges facts, which if proven true, create the reasonable inference that Piccinini should have known of the conditions of Plaintiff's cell. Plaintiff alleges he notified Defendants and other correctional officers that the plumbing in his cell was inoperable. The water to his cell was then shut off while it was repaired. The plumbing broke again and the water was shut off for a second time. It is reasonable to infer that if the plumbing is shut off to a cell and a plumber is called in to fix the problem, Piccinini, in his role, knew or should have known about the plumbing problem in Plaintiff's cell. Plaintiff also alleges he repeatedly told Defendants about the smell and sewage in his cell, but the problem was not addressed. *See Howard*, 887 F.2d at 138 (finding one factor in considering reckless disregard was that the plaintiff made repeated requests and complaints about the conditions of his cell, but Defendants never addressed the problems). Finally, Plaintiff alleges he requested to transfer cells but Defendants denied those requests. It is not clear from Plaintiff's complaint how Piccinini specifically knew of Plaintiff's request to transfer cells, but construing the allegation Defendants denied Plaintiff's request for transfers to include Piccinini, it is reasonable to infer Piccinini knew or should have known about the conditions of Plaintiff's cell.

Knowledge of a violation without action supports a finding of deliberate indifference. While a single incident or a series of isolated incidents is usually insufficient to assign supervisor liability, a pattern of incidents may be sufficient. *Howard,* 88 F.2d at 138. Here, Plaintiff repeatedly complained about the conditions of his cell for two months without remedy. Piccinini argues that two months is insufficient to form a pattern. *Cf. Id.* (holding that continuous

4

notification over a period of two years was sufficient to allow a Jury to evaluate a § 1983 claim). However, Piccinini does not point to any law that states two months is insufficient.

The Court finds Plaintiff has alleged sufficient facts, which if true, would establish Piccinini's inaction amounts to a deliberate indifference, but barely. Thus, the motion to dismiss Count I is denied.

## II. Plaintiff fails to state a claim under § 1983 for failure to supervise and train against Jackson County.

In Count II, Plaintiff alleges Jackson County had a policy or custom of inadequately supervising and training its correctional officers, which exhibited a deliberate indifference to his constitutional rights.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from: (1) an "official municipal policy," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); (2) an unofficial "custom," *id.*; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). A policy and a custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

5

Here, Plaintiff's complaint makes conclusory statements that it was Jackson County's policy or custom to inadequately train and supervise correctional officers and that Jackson County's policies or customs demonstrate deliberate indifference. Plaintiff does not allege whether he is pursuing his claim under a 'policy' or 'custom' theory. Additionally, Plaintiff does not state which policy or custom Defendants had that was the driving force behind the alleged constitutional violations. Further, Plaintiff does not allege there was a continuing, widespread, pattern of misconduct by Jackson County employees. Thus, the Court finds Count II does not state a claim. However, Plaintiff's request for leave of Court to file First Amended Complaint (Doc. 12 at 11), is GRANTED.

### III. Plaintiff alleges a dangerous condition existed on the property.

In Count III, Plaintiff alleges premises liability against all Defendants. Piccinini and Jackson County move to dismiss this claim arguing Defendants are entitled to sovereign immunity and Plaintiff has not alleged his injuries are the result of a dangerous condition, which is necessary to waive sovereign immunity.

Under § 537.600.1, a public entity is afforded sovereign immunity from tort actions. *Necker by Necker v. City of Bridgeton*, 938 S.W.2d 651, 654 (Mo. Ct. App. 1997). A municipal corporation is a "public entity" within the meaning of § 537.600. *Id.* However, under § 537.600.1(2), sovereign immunity is waived for injuries caused by the dangerous condition of a public entity's property. *Id*. The statutory provisions which waive a public entity's sovereign immunity must be strictly construed. *Necker*, 938 S.W.2d at 654 (Mo. Ct. App. 1997).

Thus, to state a claim under the "dangerous condition" exception to sovereign immunity, a plaintiff must establish: (1) a dangerous condition of the property; (2) that the injuries directly resulted from the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of harm of the kind which was incurred; and (4) that a public employee negligently created the condition or that the public entity had actual or constructive notice of the

dangerous condition.  § 537.600.1(2); *Cain v. Missouri Highway & Transp. Comm'n*, 239 S.W.3d 590, 593 (Mo. 2007).  Missouri courts have interpreted the phrase "dangerous condition" to include "both defects in the physical condition of public property and physical deficiencies created by the placement of objects on the public property." *Boever v. Special Sch. Dist. of St. Louis Cnty.*, 296 S.W.3d 487, 493 (Mo. Ct. App. 2009); *see also Alexander v. State*, 756 S.W.2d 539, 541–42 (Mo. 1988).

Plaintiff alleges the dangerous condition was his non-functioning toilet with the need to carry water from the first floor to the second floor to flush his toilet.  Defendants argue Plaintiff does not allege the stairs were in a dangerous condition and Plaintiff's act of carrying water up the stairs constitutes an intervening act, which cannot create a dangerous condition.  While a dangerous condition cannot be created by an intervening act, *Kraus v. Hy-Vee, Inc.*, 147 S.W.3d 907, 915 (Mo. Ct. App. 2004), Defendants' focus on the stairs is misplaced.  Plaintiff does not allege the condition of the stairs was the dangerous condition, rather his inoperable toilet was a defect.  Therefore, the Court finds the Plaintiff has alleged a dangerous condition.

## Conclusion

For the foregoing reasons, the Court GRANTS IN PART Defendants' motion to dismiss (Doc. 9).  The motion is denied as to Counts I and III, and granted as to Count II.  Plaintiff's request for leave to file an amended complaint is GRANTED.

**IT IS SO ORDERED.**

Dated:  December 6, 2017              /s/ Greg Kays
                                      GREG KAYS, CHIEF JUDGE
                                      UNITED STATES DISTRICT COURT

7